**Robert L. BLEVINS, Plaintiff,**

v.

**Kendall R. BOYD, Security Bank of Nevada, a Nevada corporation, State of Nevada, Employment Security Department, a governmental agency, and also all other persons unknown claiming any right, title, estate, lien or interest in the real property described in Plaintiff's Complaint adverse to Plaintiff's ownership, or any cloud upon Plaintiff's title thereto, Defendants.**

**No. CV–R–85–42–ECR.**

United States District Court,
D. Nevada.

Nov. 27, 1985.

---

**864**

Richard S. Henderson, San Diego, Cal., and Douglas R. Hill, Reno, Nev., for plaintiff.

Terrance Shea, Reno, Nev., for Kendall R. Boyd.

J. Thomas Susich, Carson City, Nev., for Employment Security.

Paul C. Giese, Reno, Nev., for Security Bank.

## ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff in this action is a California citizen, and has brought a case to quiet title to a parcel of land in Washoe County to which he claims title. Jurisdiction for the suit is premised on diversity of citizenship, in that all defendants are citizens of the State of Nevada, and the parcel in question is valued at more than $10,000. The two elements for diversity jurisdiction set out in 28 U.S.C. § 1332 having been satisfied, the Court may consider the substance of the present motion. Because this is a diversity case, this Court must apply State law on substantive issues. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

At issue in this suit is whether defendant Boyd will be charged with notice of certain documents which purport to restrict the use of this parcel of land. Prior to October 5, 1982, Owen H. Cooper owned the parcel in fee. On that date, Owen Cooper executed and recorded a quitclaim deed for this property in favor of O.H.C. Batteries and Car Sales, Inc. (O.H.C.). At this time, Owen Cooper was also the sole shareholder in O.H.C. On October 6, Owen Cooper and Bruce Cooper, Owen's father, both acting as individuals, entered into and recorded an agreement which encumbered the parcel in various degrees. This document essentially recognized that Bruce Cooper had paid the entire purchase price of the parcel, and that he therefore held a constructive trust over the land. The agreement further provided that if the property or Owen Cooper's shares of O.H.C. should ever come into default under any deed of trust, the property and the shares would revert to Bruce Cooper. From the face of the agreement, however, it is clear that O.H.C. as a corporate body was not a party to the agreement.

In August of 1983, Bruce Cooper and O.H.C. became indebted to the plaintiff for $90,000 and executed a series of promissory notes and mortgages which secured the debt with this parcel. These instruments were recorded on the 10th of that month. On December 14, 1983, O.H.C., through Owen Cooper, executed a $30,000 promissory note in favor of defendant Boyd. This note was secured by a trust deed, which was also executed and recorded on December 14. The latter agreement was apparently made in violation of the agreement

between Owen and Bruce Cooper of October 6, 1982.

In October of 1983, Bruce Cooper had become aware that Owen Cooper was in breach of that agreement, and filed notice of default with the county recorder on February 11, 1985. On that date, Bruce Cooper apparently physically occupied the parcel, and asserted 100% ownership of the outstanding stock in O.H.C. Although the record is very inartfully drafted, it appears that Bruce Cooper had been in actual physical possession of the parcel well before this date. On his behalf and on that of O.H.C., Bruce Cooper then executed a deed for this parcel to the plaintiff, in lieu of a foreclosure of the mortgage which the plaintiff held on the parcel.

In his complaint, plaintiff argues that all subsequent purchasers had notice of the October 6 agreement between Owen and Bruce Cooper. Boyd, contends plaintiff, executed the promissory note and trust deed with Owen Cooper in constructive knowledge of the reverter contained in that document. Therefore, Boyd cannot claim to be a bona fide purchaser and his trust deed cannot be superior to the later agreement with the plaintiff.

Defendant Boyd has filed a motion to dismiss this complaint pursuant to Fed.R. Civ.P. 12(b)(6).* In essence the defendant argues that the October 6th agreement is a "wild" document, in that it lies outside of the chain of title. Because of this, contends defendant, the agreement imparts no constructive notice, and he cannot be bound by its provisions.

A motion to dismiss may not be granted unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved. On a motion to dismiss, the court presumes that the facts alleged by the plaintiff are true. *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir.1982). In the present case, the Court cannot say that plaintiff will never be able to establish a set of facts which would entitle him to relief, and must therefore deny the motion to dismiss.

Boyd's basic argument in requesting dismissal of this suit is that the October 6th agreement lies outside the chain of title, and that it cannot give constructive notice of the restrictions contained therein. Nevada law supports his statement. In *Snow v. Pioneer Title Inc. Co.*, 84 Nev. 480, 444 P.2d 125 (1968), the Supreme Court of Nevada stated that "[a]ny instrument executed by ... an owner which is recorded before his acquisition or after his relinquishment of title is considered outside the 'chain of title.'" *Id.* at 485, 444 P.2d 125 (*citing* 6 Powell, Real Property 293; 8A Thompson, Real Property (1963) Replacement section 4340)). If a document is outside the chain of title, the court concluded, it imparts no constructive notice to subsequent bona fide purchasers. *Id.* *See Ryczkowski v. Chelsea Title and Guaranty Co.*, 85 Nev. 37, 449 P.2d 261 (1969).

There is no question that the agreement between Owen and Bruce Cooper of October 6, 1982, lies outside the chain of title. Owen had conveyed the parcel to O.H.C. just the day before, on October 5th, and that deed was recorded before the later agreement. Thus, the agreement was recorded after the owner had relinquished his title in the property. According to Nevada law, therefore, it lies outside of the chain of title, and imparts no constructive notice.

The fact that an agreement is defectively recorded does not necessarily mean that a purchaser may never have notice of its contents, however. In *Berge v. Fredericks*, 95 Nev. 183, 591 P.2d 246 (1979), for example, Fredericks sought to transfer a parcel to Valdez in accordance with an oral ante-nuptial agreement between them. Fredericks had previously executed a deed to Berge, the plaintiff in this action, but

---

* In addition to his opposition to the defendants' motion, the plaintiff has filed a "Rebuttal" to the defendants' reply brief. There is no authority for the filing of such a document in this Court. In fact, the local rules of practice expressly forbid this. *See* Local Rule 16· (D.Nev.). In accordance with this rule, the Court has not considered this "Rebuttal" in deciding this motion.

Berge did not record the instrument until after Valdez recorded hers. Because the plaintiff's deed was absent from the record, Valdez argued, she took the property as a bona fide purchaser for value without notice of the previous transfer.

The Nevada Supreme Court disagreed with this argument. The exact timing of the recording of the two deeds notwithstanding, the court found that a party may not qualify as a bona fide purchaser if the party is under a duty of inquiry prior to the payment of consideration and transfer of legal title. This duty arises

> when the circumstances are such that a purchaser is in possession of facts which would lead a reasonable man in his position to make an investigation that would advise him of the existence of prior unrecorded rights. He is said to have constructive notice of their existence whether he does or does not make the investigation. The authorities are unanimous in holding that he has notice of whatever the search would disclose.

*Id.* 591 P.2d at 249 (*quoting Allison Steel Mfg. Co. v. Bentonite, Inc.*, 86 Nev. 494, 498, 471 P.2d 666, 668 (1970).)

The court noted further that open, notorious, and exclusive possession of lands by a stranger to the owner's title of record, at the time of a purchase from the owner of record is sufficient to put a purchaser upon inquiry as to the legal and equitable rights of the party in possession. In this situation, the vendee takes the conveyance from the vendor with full notice of the rights of the possessor, and of his subordination to these rights. This fact can only be overcome by clear and explicit proof that the vendee made a diligent, but unavailing, effort to discover or obtain actual notice of the rights of the party in possession, the court concluded. *Id.* (*quoting Brophy M. Co. v. B. & D.M. Co.*, 15 Nev. 101, 109 (1880)). In that the plaintiff had been in such possession of the property well before the transfer to Valdez, the court concluded that Valdez was put on inquiry notice by this possession. *See Snow, supra; see also Pellisier v. Title Guarantee and*

*Trust Co.*, 208 Cal. 172, 280 P. 947 (1929); *Farmer's Mutual Royalty Syndicate v. Issacks*, 138 S.W.2d 228 (Tex.Civ.App.1940). Because there were no facts in the record to indicate that Valdez had made even the most rudimentary inquiry into the plaintiff's possession, the court reversed the summary judgment given in Valdez' favor by the trial court.

In light of this case, it is clear that the present plaintiff may be able to prove that the defendant had some duty to inquire into Bruce Cooper's rights in the parcel. Plaintiff has alleged that the elder Cooper was in open and notorious possession of the property before and after the time at which the note and trust deed between Owen Cooper and the defendant were signed. This Court is required to treat this allegation of the plaintiff as true when considering a motion to dismiss. *Halet, supra.* With this in mind, plaintiff has alleged facts which indicate that the defendant had notice of the agreement of October 6, 1982. Defendant, therefore, is not entitled to judgment as a matter of law.

Of course, once the case comes to trial, plaintiff will actually have to prove that Bruce Cooper was in possession of the property at the time the note between Owen Cooper and the defendant was signed. In order to survive a motion to dismiss, however, he must only allege this fact, and he has done so.

The Court emphasizes, however, that its decision is strictly limited to the chain of title question and to the defendant's knowledge of the October 6th agreement between Bruce and Owen Cooper. The Court does not now decide what information would be imparted to the defendants by this agreement, as it appears that Bruce Cooper may never have held any interest in the property. Although he claims to hold a "constructive trust" over the property by virtue of having paid its entire purchase price, the Court is not aware of any Nevada law which actually creates such an interest. In addition, the Court notes that Owen Cooper had conveyed away any interest which he held in the property on the

day before he and Bruce Cooper signed this restrictive agreement. Any interest which Bruce Cooper claims to the property probably cannot come through this conveyance from Owen, therefore, as he no longer held title to the property when he signed the agreement. The Court only decides that Boyd cannot claim that he took his interest free and clear of Bruce Cooper's interest because of the doctrine of implied actual notice. The Court does not, however, indicate what the nature, quality, and extent of that interest may be.

IT IS, THEREFORE, HEREBY OR-DERED that defendants' motion to dismiss is *DENIED*.