AIKO BERGE, Appellant, *v.* FRED FREDERICKS and BETTY L. VALDEZ, aka BETTY L. FREDERICKS, Respondents.

No. 10251

February 28, 1979

591 P.2d 246

*Deaner, Deaner & Reynolds* and *Robert M. Apple,* Las Vegas, for Appellant.

*Eric Zubel,* Las Vegas, for Respondents.

## OPINION

By the Court, MOWBRAY, C. J.:

This is an appeal from an order granting summary judgment in favor of respondent, Betty L. Valdez, now known as Betty L. Fredericks [hereafter Valdez], defendant in an action brought by appellant to quiet title in certain property located in Clark County, Nevada.[1] We reverse and remand for a full hearing on the merits.

Appellant and Valdez both claim title to the house and lot in question through Fred Fredericks, who is now the husband of respondent Valdez. Appellant's claim is based upon a quitclaim deed from Fredericks dated June 21, 1974, and recorded January 1, 1976. The claim of Valdez is based upon a quitclaim deed from Fredericks to her dated December 22, 1975, and recorded on the same date.

The court below granted summary judgment for respondent Valdez, on the ground that there was no genuine issue of material fact. The court concluded that under NRS 111.325[2] the conveyance to appellant was void as against Valdez, whom the court found to be a subsequent bona fide purchaser for value recording first.

Appellant contends that on the basis of the affidavits and depositions before the court below, genuine issues of material fact are presented regarding whether Valdez was either (1) a purchaser for value, or (2) without notice of the prior conveyance. We agree.

---

[1]Appellant also seeks, by a separate cause of action, damages from Fred Fredericks for conveyance of the property in fraud of appellant's rights. This cause of action is not affected by the court's order, which has been duly certified as a final judgment pursuant to NRCP 54(b).

[2]"Every conveyance of real property within this state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his own conveyance shall be first duly recorded."

In Keck v. Peckham, 93 Nev. 587, 589–90, 571 P.2d 813, 815 (1977), this court reiterated the standard for appellate review of an order granting summary judgment:

> Summary judgment is appropriate only when it is clear what the truth is and there exists no genuine issue as to any material fact. Potter v. Mutual Benefit Life Ins. Co., 93 Nev. 90, 560 P.2d 914 (1977). "In deciding the propriety of the summary judgment, we must review the evidence most favorable to the party against whom summary judgment was granted and give that party the benefit of all favorable inferences that may be drawn from the subsidiary facts." Lipshie v. Tracy Investment Co., 93 Nev. 370, 375, 566 P.2d 819, 822 (1977).

On a motion for summary judgment, the trial court is precluded from drawing inferences favorable to the moving party. Abbott v. Miller, 80 Nev. 174, 390 P.2d 429 (1964).

In the case at hand, the court below granted summary judgment for Valdez upon the premise that the evidence established that she was a bona fide purchaser for value who had recorded first, and thus was entitled to the protection of the recording act. However, a party claiming title to the land by a subsequent conveyance must show that the purchase was made in good faith, for a valuable consideration; and that the conveyance of the legal title was received before notice of any equities of the prior grantee. Brophy M. Co. v. B. & D. M. Co., 15 Nev. 101, 106 (1880). *Accord,* Allison Steel Mfg. Co. v. Bentonite, Inc., 86 Nev. 494, 471 P.2d 666 (1970); Moore v. De Bernardi, 47 Nev. 33, 213 P. 1041, 220 P. 544 (1923); Moresi v. Swift, 15 Nev. 215 (1880); Gilson v. Boston, 11 Nev. 413 (1876). When the evidence is viewed, as it must be upon this appeal, in the light most favorable to appellant and without benefit of inferences favorable to movant Valdez, it is apparent that there are genuine issues of material fact which remain to be resolved, and that summary judgment, therefore, should not have been granted.

### RESPONDENT VALDEZ AS A PURCHASER FOR VALUE

The protection of the recording act is afforded only to a "subsequent purchaser . . . for a valuable consideration". NRS 111.325. A "purchaser" under similar recording acts has been defined as "one who, in exchange for a present consideration,

acquires his interest from the record owner." 6 R. Powell, *Real Property* ¶ 915, at 282–3 (Rohan rev. 1977). A subsequent grantee receiving property as a gift is, of course, precluded from claiming the benefits of such a statute. 4 A. J. Casner, *American Law of Property* § 17.6, at 546 (1952); 6 Powell, *supra,* at 284; 8 G. W. Thompson, *Real Property* § 4319, at 398 (Grimes ed. 1963). Therefore, the burden of establishing her status as a purchaser rests with respondent Valdez. Moresi v. Swift, *supra,* 15 Nev. at 224; Davis v. Ward, 41 P. 1010, 1011 (Cal. 1895); 8 Thompson, *supra* § 4316.

Fredericks and Valdez each asserted by affidavit that on October 20, 1975, they had entered into an oral ante-nuptial agreement that in consideration of her marriage to Fredericks, Valdez would receive the real property in question as her sole and separate property. They argue that the consummation of their marriage on December 7, 1975, thus constituted her "payment" of the purchase price.

The later deposition of Valdez, however, casts doubt upon these factual assertions. Valdez testified, for example, that according to the pre-nuptial agreement, "We were going to sell [the property in question] and it was going to go towards a house that he would buy me." She further testified that the first time she and Fredericks had discussed putting the property in her name was "about two days before we did go down and make the deed out." Since the deed was executed on December 22, 1975, this would place that discussion about two weeks after their marriage on December 7.

Respondent Valdez is correct in asserting that marriage—unlike "love and affection"—*may* constitute valuable consideration, entitling a grantee of property to the status of a purchaser for value. *See* 1 A. Corbin, *Contracts* §§ 131, 134 (1963); 8 Thompson, *supra* § 4319, at 401. However, as with consideration of any other kind, "[m]arriage as a consideration must be bargained for and exchanged in return for that received." Davis v. Nielson, 515 P.2d 995, 1004 (Wash.App. 1973). *See also* 1 Corbin, *supra* § 134; Restatement (Second), *Contracts* § 75 (Tent. Draft, 1973). If, therefore, the marriage was in fact consummated *prior* to any agreement to grant the property in question to respondent Valdez, the marriage would *not* constitute valuable consideration for the transfer. *See* Lloyd v. Fulton, 91 U.S. 479 (1875); Kramer v. Kramer, 74 N.E. 474 (N.Y. 1905); Annot., 63 A.L.R. 1184 (1929).

The court below found "that Betty L. Valdez married Fred Fredericks with the consideration that he would transfer the property to her." Since the evidence would permit an inference

that the agreement to transfer the property to Valdez was not, in fact, entered into prior to her marriage to Fredericks, this finding was improperly made upon the motion for summary judgment.

## RESPONDENT VALDEZ' NOTICE OF
## THE PRIOR CONVEYANCE

The court below also found that "Betty L. Valdez knew nothing of the plaintiff's unrecorded deed prior to the marriage." In order to be entitled to the status of a bona fide purchaser without notice under NRS 111.325, respondent Valdez was required to show that legal title had been transferred to her before she had notice of the prior conveyance to appellant. Moore v. De Bernardi, *supra,* 47 Nev. at 55, 220 P.2d at 547 (1923). Moresi v. Swift, *supra,* 15 Nev. at 223; Boskowitz v. Davis, 12 Nev. 446, 466 (1877). *See* 4 Casner, *supra* § 17.9, at 557.

Fredericks and Valdez each asserted by affidavit that Valdez first had express notice of the prior unrecorded deed to appellant on December 22, 1975, the same day the deed to Valdez was executed and recorded. Each further asserted that Fredericks told Valdez of the prior conveyance only after execution of the deed. At deposition, however, Valdez testified that the discussion of transfer of the property to her, two days prior to the execution of the deed, arose because "there was no quitclaim deed on the house *filed* and he [Fredericks] wanted to get one and put it into my name." (Emphasis added.)

It has been noted by one commentator that "notice may be inferred from slight circumstances when it is shown that the purchaser and the vendor, who has made a prior conveyance or encumbrance of the same property, are intimately associated in business, or intimately related by blood or connected by marriage." 8 Thompson, *supra* § 4326, at 462. The same commentator has noted: "In order to be able to wrap around himself the cloak of a bona fide purchaser the buyer must be acting in good faith. He must not be in collusion with the seller. Such a proposition is axiomatic." 8 Thompson, *supra* § 4313, at 367.

Even if the assertions by Fredericks and Valdez as to the timing of the express notice to Valdez are credited, however, Valdez would not qualify as a bona fide purchaser without notice if, prior to the payment of consideration and the transfer of legal title, she was under a duty of inquiry. Such duty arises

when the circumstances are such that a purchaser is in possession of facts which would lead a reasonable man in his position to make an investigation that would advise him of the existence of prior unrecorded rights. He is said to have constructive notice of their existence whether he does or does not make the investigation. The authorities are unanimous in holding that he has notice of whatever the search would disclose.

Allison Steel Mfg. Co. v. Bentonite, Inc., 86 Nev. 494, 498, 471 P.2d 666, 668 (1970), quoting 4 Casner, *supra* § 17.11, at 565-66.

It is undisputed that from mid-June, 1975, until the time of the motion for summary judgment, appellant was in sole and exclusive possession of the property in question. It is also undisputed that on or about October 27, 1975, respondent Valdez visited the house, and that from that date, prior to the marriage as well as to the transfer of legal title, she had actual notice of appellant's residence on the property.

This court, in an early case regarding implied, or "inquiry" notice, recognized that

As a general rule the authorities declare that open, notorious, and exclusive possession and occupation of lands by a stranger to a vendor's title, as of record, at the time of a purchase from and conveyance by such vendor out of possession, is sufficient to put such purchaser upon inquiry as to the legal and equitable rights of the party so in possession, and such vendee is presumed to have purchased and taken a conveyance from the vendor with full notice of all legal and equitable rights in the premises of such party in possession and in subordination to these rights; and this presumption is only to be overcome or rebutted by clear and explicit proof on the part of such purchaser, or those claiming under him, of diligent, unavailing effort by the vendee to discover or obtain actual notice of any legal or equitable rights in the premises in behalf of the party in possession.

Brophy M. Co. v. B. & D. M. Co., *supra,* 15 Nev. at 109. (Refusing to apply rule to possession by prior *grantor.*) *Accord,* Keck v. Brookfield, 409 P.2d 583 (Ariz.App. 1965); Sheerer v. Cuddy, 24 P. 713 (Cal. 1890); J. R. Garrett Co. v. States, 44 P.2d 538 (Cal. 1935). *See also* 4 Casner, *supra* § 17.12; 8 Thompson, *supra* § 4332.

As suggested in *Brophy,* a "purchaser put upon inquiry may

rebut the presumption of notice by showing that he made due investigation without discovering the prior right or title he was bound to investigate. The question whether he has made due inquiry is one of fact, to be investigated by the jury. . . ." 8 Thompson, *supra* § 4326, at 451.

Respondent Valdez has admitted that she made no inquiries of appellant, and relied upon Fredericks' assertion that he had title to the property. Courts have consistently held that reliance upon a vendor, or similar person with reason to conceal a prior grantee's interest, does *not* constitute "adequate inquiry" for purposes of rebutting the presumption of notice. *See, e.g.,* Keck v. Brookfield, *supra* [409 P.2d 583 (Ariz.App. 1965)]; Schroeder v. Toedtemeier, 200 P.2d 606 (Or. 1948); Pender v. Dowse, 265 P.2d 644 (Utah 1954).

We conclude, therefore, that viewing the evidence in the light most favorable to appellant, respondent Valdez was not entitled to the protection of the recording act. It is not clear that Valdez was either a purchaser for value or that she was without notice of the prior conveyance. Consequently, the summary judgment must be reversed. It is so ordered and the case is remanded for a full hearing on its merits.

THOMPSON, GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.