HOWARD HUGHES MEDICAL INSTITUTE, APPELLANT, *v.* JUNE GAVIN, SPECIAL ADMINISTRATRIX OF THE ESTATE OF ANNETTE GANO LUMMIS, DECEASED, RESPONDENT.

No. 12416

December 29, 1980                    621 P.2d 489

*Fahrenkopf, Mortimer, Sourwine, Mousel & Sloane,* Reno; *Sherwin J. Markman* and *Joseph M. Hassett, Hogan & Hartson,* Washington, D.C., for Appellant.

[1]The Governor designated the Hon. Howard Babcock, Judge of the Eighth Judicial District Court, to sit in the place of THE HON. NOEL MANOUKIAN, who was disqualified. Nev. Const., art. 6, § 4.

*Echeverria & Osborne, Chartered,* Reno; *Morse-Foley,* Las Vegas; *Andrews, Kurth, Campbell & Jones,* Houston, Texas, for Respondent.

## OPINION

By the Court, BATJER, J.:

Howard R. Hughes, Jr., died on April 5, 1976. To date, no will executed by Hughes has been found. The appellant, Howard Hughes Medical Institute (HHMI), seeks to establish the terms of a lost will leaving most of the Hughes estate to HHMI.

HHMI filed its petition to probate a lost or destroyed will of Howard Hughes on January 12, 1977. Respondent, the estate of one of Hughes' next-of-kin, contested the probate. Following extensive discovery and will-search activities, respondent moved for summary judgment, which was granted on February 1, 1980.

As grounds for reversal of the trial court's action, appellant claims:

(a) that alleged declarations of the testator may be considered testimony of one of the two credible witnesses required under NRS 136.240 to prove the contents of a lost will;

(b) that declarations of a deceased person who had personal knowledge of the contents of a lost will can also be considered as testimony of one credible witness required under NRS 136.240; and

(c) that summary judgment was improperly granted.

In this state, a will may not be proved as a lost or destroyed will unless it was in existence at the death of the testator and unless its provisions can be clearly and distinctly proved by at least two credible witnesses.[1]

The evidence in the record on appeal tends to show that Hughes may have executed a will in 1925, although only an unexecuted, unconformed draft has been found. There are also indications that other wills were drafted in 1930, 1938 and sometime during the 1940's. It is claimed that all alleged wills benefited medical research.

Only John T. Pettit, whose deposition was presented to the trial court, allegedly read a will signed by Hughes, which left all his estate to HHMI. The trial court, in granting respondent's motion for summary judgment, reasoned that the failure to show the existence of the two testifying witnesses required by NRS 136.240(3) entitled the respondent to judgment as a matter of law.

1. HHMI argues that declarations made by Hughes, and others with personal knowledge of the alleged will, may be substituted for the second credible witness. We do not agree.

---

[1]NRS 136.240(3) provides:

No will shall be allowed to be proved as a lost or destroyed will unless the same shall be proved to have been in existence at the death of the person whose will it is claimed to be, or be shown to have been fraudulently destroyed in the lifetime of such person, nor unless its provisions shall be clearly and distinctly proved by at least two credible witnesses.

While NRS 51.105(2)[2] makes hearsay evidence admissible relative to the execution, revocation, identification or terms of the declarant's will, the testator's declarations cannot be used to supply one of the credible witnesses required by NRS 136.240(3). Courts in jurisdictions with statutes similar to NRS 136.240(3) have required that each of the two witnesses be able to testify from his or her personal knowledge, not from the declarations of others. This court, in In re Duffill's Estate, 57 Nev. 224, 61 P.2d 985 (1936), rejected one witness' testimony because his only knowledge of the contents of the will was based upon statements of the deceased. *See e.g.,* In re Estate of Gardner, 417 P.2d 948 (Wash. 1966); Loy v. Loy, 246 S.W.2d 578 (Ky. 1952); Day v. Williams, 85 P.2d 306 (Okla. 1938); *see also* 3 Page on Wills (3d ed. 1961) §§ 29.157, 29.161.

The strict statutory requirements for executing a valid will would be rendered ineffectual if a deceased's declarations were sufficient to dispose of his estate. NRS 133.040. While a testator's declarations may be useful in interpreting ambiguous terms of an established will or in corroborating other competent evidence, they cannot be substituted for one of the witnesses required by NRS 136.240(3).

2. HHMI contends that declarations of a deceased person who had knowledge of the contents of a lost will should be considered testimony of one of the two credible witnesses required by NRS 136.240 to prove the contents of a lost will. HHMI asserts that statements by Hughes' attorneys Cook and Andrews should be admissible under NRS 51.315[3] because they were made under circumstances free from any motiviation to lie and they are necessary to prove the contents of the will. *See e.g.* Johnstone v. State, 92 Nev. 241, 548 P.2d 1362 (1976).

We cannot agree. NRS 136.240[4] requires living witnesses or signed, sworn testimony reduced to writing.

[2]NRS 51.105(2) provides:

A statement of memory or belief to prove the fact remembered or believed is inadmissible under the hearsay rule unless it relates to the execution, revocation, identification or terms of declarant's will.

[3]NRS 51.315 provides:

1. A statement is not excluded by the hearsay rule if:

(a) Its nature and the special circumstances under which it was made offer strong assurances of accuracy; and

(b) The declarant is unavailable as a witness.

2. The provisions of NRS 51.325 to 51.355, inclusive, are illustrative and not restrictive of the exception provided by this section.

[4]NRS 136.240 provides:

1. The petition for the probate of a lost or destroyed will must state, or be accompanied by a written statement of, the testamentary words, or the substance thereof. If the will is established the provisions thereof must be set forth

Strict compliance with the requirements of NRS 136.240 precludes proof of the contents of a lost will by hearsay declarations of deceased people, unless the declarant's testimony is written and signed by the declarant. While declarations not in this form may be admissible for other purposes, if trustworthy and necessary, they are not sufficient to prove a lost will under the statute.

3. Summary judgment is proper when the moving party is entitled to judgment as a matter of law. Harvey's Wagon Wheel v. MacSween, 96 Nev. 215, 606 P.2d 1095 (1980). In reviewing a summary judgment, this court must accept as true the allegations and reasonable inferences favorable to the position of the non-moving party. Round Hill Gen. Improvement v. B–Neva, 96 Nev. 181, 606 P.2d 176 (1980).

HHMI claims that Dan Newburn[5] may change his mind and testify as a second necessary witness at the trial and therefore a factual issue exists precluding summary judgment. Neither mere conjecture nor hope of proving the allegations of a pleading is sufficient to create a factual issue. *See* NRCP 56(e); Garvey v. Clark County, 91 Nev. 127, 532 P.2d 269 (1975).

HHMI has failed to provide evidence sufficient to support its petition to probate the lost will, and summary judgment was properly granted.

Because of the requirement of strict compliance with NRS 136.240, the existence of a draft of a will allegedly executed by Hughes in 1925, without more, does not create a factual issue which would preclude summary judgment.

Affirmed.

---

in the order admitting the will to probate, and the order must be so entered at length in the minutes or a written order signed, filed and recorded.

2. The testimony of each witness must be reduced to writing; signed by him and filed, and shall be admissible in evidence in any contest of the will, if a witness has died or has permanently removed from the state.

3. No will shall be allowed to be proved as a lost or destroyed will unless the same shall be proved to have been in existence at the death of the person whose will it is claimed to be, or be shown to have been fraudulently destroyed in the lifetime of such person, nor unless its provisions shall be clearly and distinctly proved by at least two credible witnesses.

[5]In April, 1978, Newburn purportedly told representatives of the Hughes estate that he had read an executed copy of Hughes' will. He refused to be deposed, claiming the news media privilege. *See* Newburn v. Howard Hughes Med. Institute, 95 Nev. 368, 594 P.2d 1146 (1979).

THOMPSON, J., FONDI, D. J.,[6] ZENOFF, Sr. J.,[7] and GREG-ORY, Sr. D. J.,[8] concur.